UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FABIAN BUTT, PHILLIP CLARK, NAKISHA MITCHELL, GEORGE HOCKETT, OWEN BROWN, TIMOTHY GLENN, and ANTWON SIMMONS, individually and on behalf of all others similarly situated,

      Plaintiffs,

-v-

MEGABUS NORTHEAST LLC,

      Defendant.



Case No. 11-cv-3993 (JPO)

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTIONS FOR CERTIFICATION OF SETTLEMENT CLASSES, FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FLSA SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND APPROVAL OF REPRESENTATIVE SERVICE AWARD (IN THE FORM OF INCENTIVE PAYMENT)

On June 13, 2011, Named Plaintiffs[1] commenced this Action against Defendant Megabus Northeast LLC ("Defendant" or "Megabus") as a "hybrid collective and class action" on behalf of themselves and others similarly situated under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, Ch. 31 of the Consolidated Laws of New York ("NYLL"). Plaintiffs, in the capacity of street dispatchers, luggage loaders, and ticket agents, were employed by Defendant in the New York, Pennsylvania, Maryland, and Washington D.C. from as early as June 13, 2005, and were not paid overtime hours for hours worked in excess of forty (40) per workweek under the FLSA and the NYLL. (DE-1, 9; DRG Decl.[2] ¶ 6).

---

[1] The Named Plaintiffs Fabian Butt, Phillip Clark, Nakisha Mitchell, George Hockett, Owen Brown, Timothy Glenn, and Antwon Simmons ("Plaintiffs").

[2] "DRG Decl." refers to the Declaration of Denise Rubin Glatter in Support of Plaintiffs' Motion for Certification of the Settlement Classes, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement, dated September 14, 2012 and all Exhibit references are to documents attached thereto.

1

The Lawsuit[3] sought, *inter alia*, certification of this Action as a "collective action" under the FLSA and as a "class action" under Federal Rule of Civil Procedure ("FRCP") 23 and state law, and sought unpaid overtime wages, prejudgment interest, liquidated damages, and attorneys' fees and costs. In response to the Lawsuit, Defendant filed an Answer disputing the material allegations in the Lawsuit and denying any liability in the class and collective action. (DE-6).

After active litigation of the lawsuit, including: (1) the exchange of hundreds of pages of documents; (2) thorough investigation by Class Counsel and the Named Plaintiffs; (3) a December 1, 2011 mediation session with Carol Wittenberg, a well-known and experienced employment mediator; and (4) extensive negotiations, the Parties entered into the proposed the Joint Settlement Agreement and Release, between Plaintiffs and Defendant, dated March 8, 2012 (the "Settlement Agreement"). (DRG Decl. ¶¶ 9-11, 13-16). The Settlement Payment described in the Settlement Agreement covers class members' awards, an incentive payment, and attorneys' fees and costs. (Ex. A § 2.1; DRG Decl. ¶ 17).

The Parties commenced settlement discussions on or around October 2011 through non-binding private mediation. On December 1, 2011, Plaintiffs and Megabus attended a mediation session with Carol Wittenberg, a well-known and experienced employment mediator. (*Id.* ¶ 14). At the mediation, Plaintiffs and Megabus reached a tentative framework for resolving the case and for preparing the Settlement Agreement. (*Id.*). At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. (Ex. A § 6.8; DRG Decl. ¶ 16). The Settlement Agreement resolves all claims alleged in the Complaint, provides meaningful benefits to Class Members, and satisfies all of the "fairness" criteria for final approval.

On March 15, 2012, the parties jointly moved for preliminary approval of the class settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs'

---

[3]  The Complaint and Amended Complaint are collectively referred to as the "Lawsuit". (DE-1,9).

counsel as class counsel and approval of the proposed Class Notices and, as applicable, accompanying Exclusion Form and *Consent to Join Lawsuit* Form. (DE-19-21). The Court granted the parties' joint motion based on the Settlement Agreement and approved the Class Notices on April 16, 2012. (DE-22).

The Settlement Agreement provided for, and the Court approved, Megabus acting in the capacity of Claims Administrator. In this capacity, Megabus mailed the Class Notices (and Exclusion Form or *Consent to Join Lawsuit* Form) to Class Members on May 29, 2012. (Ex. B ¶ 5). Through the Class Notices, all Class Members have been notified of the terms of the settlement and their proposed relief, the allocation formula, the need for FLSA Class Members to submit a *Consent to Join Lawsuit* Form, the NYLL Class Members' right to opt out (through the submission of an Exclusion Form), and all Class Members' rights to object to the settlement. (Ex. C; Ex.B ¶ 6). The Class Notices also informed Class Members of Class Counsel's right to seek attorneys' fees in the sum of $70,000.00 which is 33.3 percent (33.3%) of the sum of $210,000.00 (the sum of the payments to Class Members, the Net Settlement Payment, ($195,000.00) plus the Incentive Payment to Plaintiff Butt ($15,000.00)) (Ex. C ¶ II.I). Out of ninety-nine (99) NYLL Class Members who were required to submit Exclusion Forms to opt out of the settlement, just one returned an Exclusion Form. Of the fifty-eight (58) FLSA Class Members (those who worked outside of New York who were required to return *Consent to Join Lawsuit* Forms to participate in the Lawsuit), seventeen (17) FLSA Class Members returned claim forms. No Class Member filed an objection. When combined, the NYLL Class and the FLSA Class numbers 115. (Ex. F ¶ 9). From the combined FLSA and NYLL Classes, the 115 individuals appear from the records available to the Parties following diligent discovery to fit the proposed class definition from the Settlement Agreement of "street dispatchers, luggage loaders, and ticket agents who

3

work or have worked for Megabus" in New York beginning June 13, 2005 or outside New York beginning June 13, 2008. (Ex. A at §§ 1.2, 1.3, 1.6, 1.7). As applicable, the 115 individuals are Qualified Class Members since each either opted-in to the FLSA Class by filing a *Consent to Join Lawsuit* Form or refrained from filing an Exclusion Form to opt-out of the NYLL Class. (Ex. A at § 1.19).

On September 14, 2012, Plaintiffs filed their Motion for Certification of Settlement Classes, Final Approval of Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval"). The same day, Plaintiffs also filed their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees"), as well as a Motion for Representative Service Award in the Form of Incentive Payment ("Motion for Service Award"). Defendant did not oppose these motions.

The Court held a fairness hearing on September 25, 2012. Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, Motion for Service Award, the supporting declarations, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

### Approval of the Settlement Agreement and Certification of Classes

1. The Court hereby grants the Motion for Final Approval, approves the settlement, and certifies the collective and class action and respective classes as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23 and the FLSA.

2. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.

4

2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

4. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, No. 08 Civ. 8531, No. 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

***Procedural Fairness***

5.    The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). Here, the settlements were reached after Class Counsel had conducted a thorough investigation and evaluated the claims and after extensive negotiations between the parties. Class Counsel engaged in necessary efforts to obtain pay and time records that would enable Class Counsel to perform accurate damages calculations. Class Counsel was able to extrapolate to perform damages calculations based on the records Defendants were able to provide. Class Counsel interviewed Plaintiffs and obtained and reviewed hundreds of pages of documents from Plaintiff and the opt-ins. From these sources, Class Counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims.

6.    To resolve the case, the Parties commenced settlement discussions in or about October 2011. On December 1, 2011, Plaintiffs and Megabus attended a mediation session with Carol Wittenberg, a well-known and experienced employment mediator. (DRG Decl. ¶14). At the mediation, Plaintiffs and Megabus reached a tentative framework for resolving the case. (*Id.*) At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. (Ex. A § 6.8; DRG Decl. ¶16). These arm's-length negotiations involving counsel for the Parties create a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Khait*, 2010 WL 2025106 at *5; *Clark v. Ecolab*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 at *5 (S.D.N.Y. May 11, 2010).

***Substantive Fairness***

7.    The settlement is substantively fair. All of the factors set forth in *City of Detroit.*,

495 F.2d at 463 which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

8.  The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

9.  Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

10.  The Class's reaction to the settlements was quite positive. The Class Notice included an explanation of the allocation formula. The Class Notices also informed Class Members, as applicable, of the need to submit a *Consent to Join Lawsuit* Form, their right to object to or exclude themselves from the settlements, and explained how to do so.

11.  None of the Class Members submitted a timely objection to the Settlement, just one of the initial ninety-nine (99) NYLL Class Members requested exclusion, and seventeen (17) -- of a potential class of fifty-eight (58) -- FLSA Class Members submitted *Consent to Join Lawsuit* Forms – an overall participation rate of seventy-three percent (73%). This favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4

(E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion).

12.     Therefore, the second *Grinnell* factor weighs in favor of final approval.

13.     The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, over the course of several months, concurrent with the Parties' entry into settlement discussions, and even after preliminary approval by this Court, Plaintiffs obtained substantial informal discovery, including both documentary evidence and data on Class Members' damages. The third *Grinnell* factor weighs in favor of final approval.

14.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs claims and Defendants' defenses thereto presents risk. The settlements eliminate this uncertainty. The fourth and fifth *Grinnell* factors weigh in favor of final approval.

15.     The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval. A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The sixth *Grinnell* factor weighs in favor of final approval.

16.     The Defendant's ability to withstand a greater judgment is not clear. Certainly, the settlements eliminated the risk of collection, as the Settlement Agreement identifies the method for payout of the Settlement Payment. Moreover, even if protracted litigation were to yield a judgment larger than the Settlement Payment and although Defendant might be able to withstand a judgment greater than the Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair." *See Austrian and German Bank*, 80 F.Supp.2d at 178 n. 9 (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)). ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate."). The seventh *Grinnell* factor is neutral and doesn't preclude final approval since all of the other *Grinnell* factors favor final approval.

17.     The substantial amount of the settlement weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In this case, based on Plaintiffs' pre-settlement investigation and under the terms of the Settlement Agreement, the Class Members will receive a substantial payment to address the underpayment of wages. The eighth and ninth *Grinnell* factors favor final approval.

### Approval of FLSA Settlements

18.     The Court hereby approves the FLSA settlement.

19.     The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *Torres*, 2010 WL 5507892, at *6; *Clark*, 2010 WL 1948198, at *7.

20.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres*, 2010 WL 5507892, at *6 (quoting *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *6 (Aug. 23, 2010)). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Lynn's Food Stores*, 697 F.3d at 1354; *Clark*, 2010 WL 1948198, at *7.

21.     The Court finds that the FLSA settlements were the result of contested litigation and arm's length negotiation.

### Dissemination of Notice

22.     Pursuant to the Preliminary Approval Order, dated April 16, 2012 (DE-22), the Class Notices were sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Class Notices). (Ex. B ¶¶ 4, 12). This Court finds that the Class Notices fairly and adequately advised Class Members of the nature of the action; a description of the Classes; the FLSA Class Members' need to submit a *Consent to Join Lawsuit* Form, the NYLL Class Members' right to opt out of the settlement through the submission of an Exclusion Form, and the right of all Class Members to object to the settlements; to be represented by counsel; and to appear at the fairness hearing. Class Members were provided the best notice

practicable under the circumstances. The Court further finds that the Class Notices and distribution of such Class Notices comported with all constitutional requirements, including those of due process.

### Award of Fees and Costs to Class Counsel

23. On April 16, 2012, the Court appointed The Ottinger Firm, P.C. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). (DE-22).

24. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

25. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law. (*See* DRG Decl. in Support of Motion for Attorneys' Fees).

26. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel has committed substantial resources to prosecuting this case.

27. The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel $70,000.00 in attorneys' fees or 33.3% of the sum of $210,000.00 (the sum of the payments to Class Members, the Net Settlement Payment, ($195,000.00) plus the Incentive Payment to Plaintiff Butt ($15,000.00)). The total Settlement Payment is $280,000.00, so the $70,000.00 attorneys' fees award is a sum added to the Net Settlement Payment and Incentive Payment and does not reduce the sum payable to Class Members. (Ex. A § 2.1).

28. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Diaz*, 2010 WL 5507912, at

11

*7-8 (following percentage-of-the-fund method); *deMunecas*, 2010 WL 3322580, at * 8-9 (same); *Clark*, 2010 WL 1948198, at *8-9 (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

29. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Frank*, 228 F.R.D. at 189. Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL. *See Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) (discussing remedial purpose of FLSA); *Ramos v. Marksue Realty Corp.*, 586 F. Supp. 488, 492 (S.D.N.Y. 1984) (discussing remedial purpose of NYLL); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 994 (N.Y. 2008) (discussing remedial purpose of NYLL).

30. Class Counsel's request for 33.3% of the $195,000.00 Net Settlement Payment plus the $15,000.00 Incentive Payment – where the sum of $70,000.00 is a value-added above the Net Settlement Payment and Incentive Payment and does not reduce either of those

payments -- is reasonable and "consistent with the norms of class litigation in this circuit." *Diaz*, 2010 WL 5507912, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *see also Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58-59 (E.D.N.Y. 2010) (approving $60,000 in attorneys' fees, which amounted to one-third of the settlement fund); *deMunecas*, 2010 WL 3322580, at *8 (granting class counsel 33% of settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel one-third of settlement fund in wage and hour class action); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Tech. Co.* No. 00 Civ. 8495, 186 F. Supp. 2d 358, 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

31.    Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33.3% is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008). While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a 33.3% recovery in a case like this one

where Class Counsel's fee entitlement is entirely contingent upon success. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

32. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of 33.3% of the fund.

33. Moreover, "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.'" *Alleyne*, 264 F.R.D. at 58-59 (citing and quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir.2007)) (internal quotes omitted).

34. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

35. The award of attorneys' fees is also inclusive of Class Counsel's reimbursement for their litigation expenses in the amount of $1,243.37, which the Court deems to be reasonable, since Class Counsel will recover their litigation expenses from the $70,000.00 sum awarded for attorneys' fees and expenses. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

36.     The attorneys' fees award is inclusive of both attorney time worked and the reimbursement of litigation costs and expenses. Accordingly, the sum of $70,000.00 shall be paid from the $280,000.00 Settlement Payment.

### Service Award to Plaintiff Butt

37.     The Court finds reasonable a service award in the form of Incentive Payment of $15,000.00 to Plaintiff Fabian Butt. This sum shall be paid from the Settlement Payment.

38.     Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See Torres*, 2010 WL 5507892, at *8 (finding reasonable service awards of $15,000.00 to each of 15 named plaintiffs); *Clark*, 2010 WL 1948198, at *9 (granting service awards of $10,000.00 to each of 7 named plaintiffs); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.")

### Conclusion

39.     The "Effective Date" of the Settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlements shall be the day after all appeals are finally resolved (Settlement Agreement § 1.17).

40.     Settlement Shares and the Service Award (in the form of an Incentive Payment)

will be mailed by Defendant to Qualified Class Members within twenty (20) days following the Effective Date. (Settlement Agreement § 2.8).

41.     Payment of Class Counsel's Attorneys' Fees (inclusive of Class Counsel's costs) will also be mailed by Defendant to Class Counsel within twenty (20) days following the Effective Date. (Settlement Agreement § 2.8).

42.     Defendant shall mail all applicable IRS Forms (and any other similar forms as required by any other government agency) to Qualified Class Members and Class Counsel in a timely manner in accordance with applicable law.

43.     This action shall be dismissed on the merits with prejudice and all Qualified Class Members, as defined in the Settlement Agreement, shall be and are permanently barred from prosecuting against Defendant, any individual or class claims encompassed in Sections 3.1 or 3.2 of the Settlement Agreement, including without limitation, any claims arising out of the acts, facts, transactions, occurrences, representations, or omissions set forth in the Lawsuit; and through the Effective Date of the Settlement.

44.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

It is so ORDERED this 25 day of Sept., 2012.

_____
The Honorable J. Paul Oetken
United States District Judge